IN RE LUKS.

(No. B67-4469—Decided August 27, 1968.)

United States District Court, Northern District of Ohio, Eastern Division.

*Mr. Marvin Sicherman,* for bankrupt.
*Mr. Myron E. Wasserman,* for Trustee, United States District Attorney.

UNDISPUTED FACTS AND QUESTIONS PRESENTED

GNAU, Referee in Bankruptcy. Consideration of the questions in this case is simplified by the agreement of counsel for the bankrupt and for the District Director, U. S. Internal Revenue Service, that this court has jurisdiction to render a judgment herein; that the tax lien of the United States against the bankrupt is valid; that the lien was recorded by the United States on June 9, 1952, in the amount of $35,533.31 for unpaid income taxes which were legally due and owing by the bankrupt more than three years preceding bankruptcy; that since his bankruptcy on July 28, 1967, the bankrupt has been employed as a wage earner.

The only questions on which counsel for the parties are in disagreement and which this court must decide are:

1. Does the bankrupt's discharge on December 28, 1967, release him from these tax debts, despite the language of Sec. 17a (1) of the Bankruptcy Act (11 U. S. Code, Section 35) "that a discharge in bankruptcy shall not release or affect any tax lien"?

2. Does the release of these tax debts by the bankrupt's discharge prevent any tax liens based upon taxes so released, from attaching to property, real or personal, tangible or intangible, acquired by the bankrupt after bankruptcy?

DISCUSSION

For clarity and convenience, discussion of the two questions will be combined in this opinion because they each involve the interpretation of Sec. 17a (1) of the Bankruptcy Act as amended October 3, 1966.

When the punctuation employed in this section is carefully examined, it is apparent from its unambiguous language that Congress intended that a discharge in bankruptcy shall *not* release any *taxes* which became legally due and owing within three years before the bankruptcy; also that it shall *not* release certain additional *taxes* described in subsections (a), (b), (c), (d), and (e) nor shall the discharge bar any taxing authority from any remedy available against any exemption of the bankrupt, allowed by the law and duly set apart to him under the Bankruptcy Act. The further and final provision of this Section 1 provides that no *tax lien* shall either be *released or affected* by the bankrupt's discharge.

Collier (14th Ed., Vol. 1, Section 17.14, pages 1613-17) in naming "inherent ambiguities" in 17a (1) discusses (on page 1616 *et seq.*) the problem of construction presented by the phrase "any tax lien" and recommends that it be interpreted and construed to read "any recorded tax lien." The phrase "legally due and owing" is also discussed. Neither of these possible ambiguities needs resolution in this opinion because neither applies to the questions here discussed.

The only words in 17a (1) involved in the questions here presented are "debts," "taxes," and recorded "tax lien." These words, as applied to these agreed facts, are not ambiguous and their judicial construction and interpretation is not required or justified.

The written briefs on behalf of both parties discuss the legislative history as well as H. R. and Senate debates relating to the 1966 amendment of Section 17a (1) of the Bankruptcy Act.

The Supreme Court of the United States in *Ex Parte Collett*, 337 U. S. 55, 69 S. Ct. 959, 93 L. Ed. 1207 states:

"Petitioner's chief argument proceeds not from one side or the other of the literal boundaries of Section 1404 (a), but from its legislative history. The short answer is that there is no need to refer to the legislative history where the statutory language is clear. 'The plain words and meaning of a statute cannot be overcome by a

legislative history which, through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction.' *Gemsco, Inc.*, v. *Walling* (1945), 324 U. S. 244, 260, 89 L. Ed. 921, 933, 65 S. Ct. 605. This canon of construction has received consistent adherence in our decisions."

The language here under consideration was enacted as an amendment to Section 17a (1) of the Bankruptcy Act as a part of Public Law 89—496 and became effective October 3, 1966. *Before* the enactment of this amendment, debts for taxes were *not* released or affected by a discharge in bankruptcy. *By* this amendment the bankrupt is relieved (in most situations) of taxes which became due and owing more than three years before the bankruptcy, which are specifically released by the discharge.

The Supreme Court of the United States in *Local Loan Co.* v. *William Hunt*, 292 U. S. 234 (78 L. Ed. 1230; 54 S. Ct. 695, 93 A. L. R. 195) in the opinion on page 244 states:

"One of the primary purposes of the bankruptcy act is to 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes. * * * This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. * * * The various provisions of the bankruptcy act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act." (Citations deleted.)

Former Chief Judge Simons of the United States Court of Appeals for our Sixth Circuit (in his opinion in *Owenboro Wagon Co.* v. *Commissioner of Internal Revenue*, 209 F. 2d. 619) in discussing a deficiency-assessment decision of the tax court states:

"Of course, it is a truism that a statute must be construed so as to carry out the legislative purpose."

Section 17a (1), as now amended, clearly states that *all* provable *debts,* with exceptions stated in (a), (b), (c), (d), and (e), are released by a discharge, *except taxes* arising within three years preceding bankruptcy.

This section also provides that *"tax liens"* are *not released or affected* by its language. Obviously therefore, by this plain, clear language the *valid liens* here involved are *not* affected by this amendment.

The questions here being discussed "boil down" to whether Congress meant by the language of this amendment, to include in the phrase "tax lien" more territory and significance than the phrase normally encompasses, and whether it meant by this language to abrogate the effect of the main thrust of the amendment. (Which is to *exclude taxes* from the *debts* being released by the bankrupt's discharge, if the taxes became legally due and owing within three years preceding bankruptcy.) The language employed in the amendment reveals no such congressional intent and this intention cannot be presumed.

Viewed in this light, it would appear that while the bankrupt's discharge cannot affect a valid *tax lien* on any real or personal property of the bankrupt to which the lien has attached, the *tax claims* which arose prior to three years before the bankruptcy *are* discharged.

The contrary view advanced in the brief of counsel for the United States of America is based upon Sections 6321 to 6325 inclusive, Title 26, U. S. Code, and the decision of the United States Supreme Court in *Glass City Bank* v. *United States,* 326 U. S. 265, 90 L. Ed. 57, interpreting them. In that case the Supreme Court held that these sections, read together, indicated that Congress intended that a continuing tax lien covers any property found in the delinquent's hands at any time prior to expiration of the lien. This language would, of course, include property acquired by a bankrupt after discharge.

It must be noted however that these sections of the United States Code being interpreted by the court have to

do with ''collection'' of taxes. It must also be borne in mind that at the times of the enactment of these tax collection sections and of this Supreme Court decision, Section 17a (1) of the Bankruptcy Act, as it then read, *excluded all* taxes from the release of a bankrupt's discharge. As stated in the opinion in the *Glass City Bank Co. case,* these collection sections reveal on the part of Congress a ''purpose to assure the collection'' of such taxes.

Today (since this October 3, 1966, amendment of Section 17a (1) now under consideration) we are faced with an entirely different situation. By this bankruptcy law amendment Congress has specifically abrogated its earlier position that *no* taxes are released by a bankrupt's discharge and has specifically *released* from the operation of a bankrupt's discharge *all of those taxes which arose more than three years prior to bankruptcy.* The taxes here being considered fall into that category and are therefore released by the amendment.

It would therefore appear that the language of the Supreme Court in the *Glass City Bank case* has no present application to taxes which have already been released by the bankrupt's discharge. The Director of Internal Revenue certainly has no power or authority to collect these taxes released by the amendment nor can they be the subject of the distraint proceedings referred to by the Supreme Court in its *Glass City Bank* opinion.

It would therefore seem, that by reason of this amendment to Section 17a (1) of the Bankruptcy Act, taxes here under consideration, already released by the bankrupt's discharge, cannot be the basis for a *tax lien* on property of the bankrupt acquired after his discharge, merely because it had already attached under *then* existing law, to the property owned by the bankrupt *prior* to his discharge and *prior* to the effective date of this bankruptcy law amendment. As the taxes here involved have been *released* by the bankrupt's discharge they are no longer *collectible* and therefore the pronouncements in the *Glass City Bank case* concerning the *collection* of taxes can have no application. It would appear that any other interpretation will do vio-

lence to, and defeat, the legislative intent expressed by Congress in the unambiguous language it employed in the 1966 amendment to Section 17a (1).

The amendment, by its specific language, excepts the tax *lien* which was perfected prior to bankruptcy (under the then existing law) from being released or affected and the government therefore has at its command all available means for the enforcement and collection of this tax lien.

Reference is again made to language of the Supreme Court in the previously cited cases of *Local Loan Co.* v. *Hunt* (78 L. Ed. 1230) which is directly applicable to our question. The opinion states on page 1234:

"The discharge in bankruptcy operated to discharge these obligations as of the date of the adjudication, so that the obligations were discharged before the wages intended as security were in existence. *The law does not continue an obligation in order that there may be a lien, but only does so because there is one.* The effect of the discharge upon the prospective liens was the same as though the debts had been paid before the assigned wages were earned. The wages earned after the adjudication became the property of the bankrupt clear of the claims of all creditors." (Emphasis added.)

Applying this reasoning to our case, these taxes thus released by the bankrupt's discharge, cannot be a basis and foundation for a *tax lien* on property of the bankrupt acquired after his discharge, without defeating the legislative intent expressed by the unambiguous language of the amendment.

Taking a still different approach, we find that Section 6322, Title 26, U. S. Code provides an even more persuasive and compelling reason for the foregoing conclusion. This statute fixes the beginning and *the end* of the effective period of a *tax lien* as follows:

"Unless another date is specifically fixed by law, the lien imposed by Section 6321 shall arise at the time the assessment is made and shall continue *until the liability for the amount so assessed* (or a judgment against the taxpayer arising out of such liability) *is satisfied* or becomes un-

enforceable by reason of lapse of time." (Emphasis added.)

The above italicized language appeared in this statute as originally enacted. Congress later considered this section in 1966 and enacted the language appearing between the parentheses, effective as of *November 2*, 1966, by amendment as contained in Public Law 89—17. (Obviously the language in the above parenthetical addition has no effect on the question here considered.)

It would seem that any reasonable interpretation of the word "satisfied" appearing in the above Section 6321 must find that the word "release" in Section 17a (1) (as applied to the effect of a bankrupt's discharge upon taxes older than three years) is tantamount to and synonymous with "satisfy." It is apparent that this "release" of the tax debt required by Section 17a (1) was a complete "satisfaction" of the bankrupt's tax debt. It terminated his liability for these taxes as completely as if he had paid them. Obviously therefore, after this "release," the government had no lien to enforce, other than the liens which had attached before the discharge effected the release and satisfaction of the tax debt.

The validity of the above reasoning is emphasized by the fact that the amendment to *Section 17a (1)* was, after the consideration of Congress, made effective as of October 3, 1966. It was not until *November 2*, 1966, that the consideration given by Congress to Section 6321, reaffirmed it except for the addition of the words between the parentheses. In other words, Congress in considering *Section 17a (1)* decreed that it should be drastically modified as of October 3, 1966, by permitting a discharge to *release* tax debts older than three years instead of releasing *no* taxes. This same Congress in considering *Section 6321*, decreed that it should remain in effect as of November 2, 1966, with respect to terminating a tax lien when the assessed amount is "satisfied." (Changing this statute only by the parenthetical addition.) This circumstance is not without significance in revealing legislative intent.

Neither the district attorney nor counsel for the trustee have been able to find any Reviewing or Appellate Court

decision interpreting or construing this amendment. This is understandable in view of the limited time since its enactment.

However, the attention of the court has been called to two decisions on the same questions by bankruptcy courts in California. One is the case of *Richard A. Carlson, Bankrupt,* case No. 22588-AAH in the Santa Ana Office in the Central District of California decided by the Hon. A. K. Phelps, and the more recent case of *Walter B. Braund and Virginia M. Braund, Bankrupts,* case Nos. 986 IH and 987 IH in the Central District of California decided by the Hon. Herschel E. Champlin. Each of these California decisions reaches the same conclusion as contained in this opinion.

### Conclusion

Application of the foregoing discussion to the undisputed facts and to the questions here presented requires a finding that the *tax debts* here involved were released by the bankrupt's discharge and cannot be the basis of an *enforceable lien* upon property not belonging to the bankrupt at the time of the bankruptcy. Similarly these *tax debts* cannot support an *enforceable lien* against future earnings and salary of the bankrupt.

Counsel for the trustee will cause a journal entry to be prepared reflecting the foregoing decision, submit the same to the United States Attorney for this District before submitting the same for the signature of the court.

Exceptions are to be reserved to the United States Government.